IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANDRE MILLER,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:16-cv-05638

COMMISSIONER JIM RUBENSTEIN, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Wendy Hight's Motion for Summary Judgment [ECF No. 83]. The plaintiff filed a response [ECF No. 89] and the defendant filed a reply [ECF No. 95]. The matter is ripe for adjudication. For the reasons stated herein, the Motion [ECF No. 83] is **GRANTED in part** and **DENIED in part**.

I.    Background

The plaintiff, Andre Miller, is currently incarcerated in an administrative segregation unit at Mount Olive Correctional Complex ("MOCC"). Compl. ¶ 1 [ECF No. 2]. On January 21, 2015, correctional officers discovered that the plaintiff had alcohol in his cell. Def. Wendy Hight's Mot. Summ. J. Ex. 2, at 3 ("Pl.'s Dep.") [ECF No. 83-2]. When the plaintiff returned from recreation that day a corporal, Wendy Hight, approached him and said that his alcohol had been confiscated. *Id.* The plaintiff told her that he was "not worried about that" but asked why the inmates'

1

clean laundry was laying on the floor in the hallway. *Id.* at 4. Defendant Hight responded, "F*** your laundry." *Id.* In response, the plaintiff kicked his door one time. *Id.* Defendant Hight then left the pod. *Id.* The parties, through unsworn incident reports, affidavits, and depositions, provide different accounts of what happened next.

The plaintiff claims that, approximately twenty to twenty-five minutes later while locked in his solitary confinement cell, he heard the sound of a cell door being kicked on the upper tier of his pod. Compl. ¶ 12; Pl.'s Dep. 4; Pl.'s Resp. Opp'n Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 1. ("Taylor Aff.") [ECF No. 88-1].[1] Shortly after the kicking began, Correctional Officers Brandon Mooney, Anthony Kidd, and Austin Peters approached the plaintiff's cell door with the Phantom Cell Buster.[2] Compl. ¶ 14; Pl.'s Dep. 3. Officer Kidd directed Officer Peters to "pop the bean hole."[3] Pl.'s Resp. Opp'n Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 3 ("Pl.'s Aff.") [ECF No. 88-3]. When the plaintiff heard this, he grabbed a pillow, and then his mattress, to try to block the opening. *Id.* The plaintiff asked them, "What did I do?" *Id.* The officers responded, "We're spraying you boy, we'll teach you bout kicking on our shift!"[4] *Id.* The plaintiff insisted that he had not kicked his door. Pl.'s Dep. 3.

---

[1] The plaintiff incorporates by reference the exhibits attached to Defendants Rubenstein and Ballard's Motion for Summary Judgment. Pl.'s Resp. Opp. Def. Hight's Mot. Summ. J. 2 n.2 [ECF No. 89].

[2] Phantom Cell Buster is a wand device used to deploy Oleoresin Capsicum ("OC") pepper spray, a chemical agent known to cause a burning sensation and watering of the nose, eyes, and mouth. It is utilized in MOCC in order to gain compliance of inmates. *See* Def. Wendy Hight's Mot. Summ. J. 3.

[3] The "bean hole" refers to a slot in the door in which officers can give inmates food trays.

[4] The plaintiff says he does not know which officer made this statement. Pl.'s Dep. 29.

Other inmates joined in, yelling that the plaintiff had not been the inmate kicking. *Id.*; Taylor Aff.; Pl.'s Resp. in Opp. Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 2 ("Hess Aff.") [ECF No. 88-2]. In fact, Steven Taylor, another inmate, was yelling that he had been the one kicking his door. Taylor Aff. The officers talked with the plaintiff for a few moments, during which time he insisted repeatedly that he had not been kicking the door. Pl.'s Aff. 3. According to the plaintiff, they started to listen to him and "it looked like they were going to stop." *Id.*

The unsworn incident reports of three of the officers involved contest the version of events provided by the plaintiff. According to Defendant Hight, the plaintiff began to kick his door as she originally exited the pod. Def. Wendy Hight's Mot. Summ. J. Ex. 4 ("Hight Rep.") [ECF No. 83-4]. As she entered the control tower, she saw the light corresponding to the plaintiff's cell flash on and off, indicating that he was still kicking his door.[5] *Id.* At this time, she and Officer Peters returned to the plaintiff's cell and gave him a verbal command to stop kicking his door "or there would be consequences to his actions." *Id.*; Def. Wendy Hight's Mot. Summ. J. Ex. 6 ("Peters Rep.") [ECF No. 83-6]. Approximately 40 minutes later, the officer in the control tower notified the officers that the plaintiff's cell door was showing as "unsecured" on the control panel. Hight Rep.; Peters Rep.; Def. Wendy Hight's Mot. Summ. J. Ex. 5 ("Kidd Rep.") [ECF No. 83-5]. When Officers Kidd, Mooney, and Peters arrived at the plaintiff's cell, they found that he had barricaded himself in with his mattress and

---

[5] When someone kicks their door, a panel alerts correctional officers that a door is being kicked and indicates which door. Def. Wendy Hight's Mot. Summ. J. Ex. 2 *Id.* ¶ 13.

3

multiple layers of clothing and that he was continuously kicking his door. Peters Rep.; Kidd Rep. They instructed the plaintiff to cease his disruptive behavior. Peters Rep.; Kidd Rep. When he refused, they left to retrieve the Phantom OC Cell Buster and instructed another officer to notify Defendant Hight of the plaintiff's "continuous disruptive behavior." Peters Rep.; *see* Kidd Rep. According to Officer Kidd, they again "tr[ied] loud verbal commands to stop kicking his door at which time he did comply." Kidd Rep. There is no mention of the plaintiff's cooperation in the incident reports of the other officers.

It is undisputed that when Defendant Hight entered the pod, she instructed Officer Kidd to deploy a burst of pepper spray into the plaintiff's cell, though the method in which she did so is not clear. *Compare* Pl.'s Aff. 11 (stating that Hight "jumped in there and is like, spray his f***ing ass."); Hess Aff. ("Then about that time Cpl Hights [sic] came in saying f***ing spray him."), *with* Hight Rep. ("It was at this time (due to the prior incident of the door showing unsecured) I believed that the safety of the Officers and the Security of the Facility was in jeopardy and instructed COI Kidd to utilize the Phantom Oleoresin Capsicum Cell Buster in I/M Miller's cell to regain control of the situation."); Kidd Rep. ("At this time Corporal Wendy Hight did enter Pod 4 . . . and instructed me to deliver one three second burst of the Phantom Oleoresin Capsicum Cell Buster . . ."). Officer Kidd obeyed. Kidd Rep. According to the plaintiff, the officers stood by and laughed as he struggled to breathe. Taylor Aff; Resp. in Opp. Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 3 ("Miller Aff.")

4

[ECF No. 88-3]. Defendant Hight asked "how [does] the colored boy like that?" Miller Aff. The plaintiff was strip-searched and placed into mechanical restraints. Hight Rep. He was then taken to the Multi-Purpose Room to be assessed by the medical staff. *Id.* However, he refused medical treatment and decontamination. Hight Rep.; Pl.'s Dep. 5–6. Days later, the plaintiff filed a "sick call" complaining of watering eyes, burning on his face, itching on his body, and several facial scars. Pl.'s Dep. 6.

On June 23, 2016, the plaintiff filed a five-count Complaint alleging: (1) United States Constitutional violations, (2) West Virginia Constitutional violations, (3) Assault and Battery, (4) Intentional Infliction of Emotional Distress, and (5) Negligence. Compl. [ECF No. 1]. On October 12, 2016, the court entered an order dismissing the plaintiff's West Virginia Constitutional claim (Count Two), pursuant to the plaintiff's request. Order [ECF No. 20]. Thus only Counts One, Three, Four, and Five remain.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*,

5

No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III. Discussion

Defendant Hight moves for summary judgment as to all claims made against her in the Complaint: (1) § 1983, (2) West Virginia Constitutional Claims, (3) Assault & Battery, (4) Intentional Infliction of Emotional Distress, and (5) Negligence. She also asserts that she is entitled to qualified immunity for all counts. I will address the federal and state counts in turn.

#### a. § 1983 Claim

42 U.S.C. § 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his constitutional or federal rights. The plaintiff alleges that Defendant Hight violated his Eighth Amendment rights against cruel and unusual punishment by ordering the use of OC pepper spray against him, without provocation or justification and without using efforts to temper.

##### i. Qualified Immunity

Defendant Hight asserts qualified immunity regarding the constitutional claim against her. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Fourth Circuit has held that:

> When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."

*Henry v. Purnell*, 501 F.3d 374, 377 (citations omitted). Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established. *Id.* at 378. If the answer to either question is no, then the defendant is entitled to qualified immunity.

Looking to the first question, the court must determine whether the plaintiff has shown that, taking his allegations as true, Defendant Hight violated his Eighth

8

Amendment rights. The plaintiff alleges that the defendants' conduct violated his rights as guaranteed by the Eighth Amendment of the United States Constitution, which prohibits the cruel and unusual punishment and forbids the unnecessary and wanton infliction of pain. *See* U.S. Const. amend VIII; *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When such force is allegedly used by prison officials, the court must make a subjective determination—"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"— and an objective determination—whether the plaintiff has set forth a meaningful deprivation or injury. *Whitley*, 475 U.S. at 320–21.

Regarding the subjective inquiry, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" regardless of whether the resulting injuries are significant. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). There are four factors that a district court should consider when evaluating whether an officer's conduct was subjectively malicious: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the threat reasonably perceived by the responsible official, and (4) any efforts made to temper the severity of a forceful response. *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008); *see Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996).

When evaluating the *Whitley* factors in this case, it clear that the numerous disputes of fact in the record are, indeed, material. Furthermore, based on the account

9

given by plaintiff—derived from the plaintiff's deposition, sworn affidavits of other inmates, and even some corroborating statements from the officers' incident reports— it is possible that Defendant Hight acted maliciously based on resentment remaining from an altercation that took place earlier in the day.

As to the first factor—the need for the application of force—the court finds that there is a dispute of fact as to the amount of force needed. Under the plaintiff's articulation of the facts, no force was necessary at all. According to plaintiff, he had been in an altercation with Defendant Hight when he returned from rec, and he kicked his door at that time. Pl.'s Dep. 3–4. However, after that incident, he did not kick the door again. *Id.* at 4. Twenty to twenty-five minutes later, he heard kicking from another cell in the pod. *Id.*; Taylor Aff. When he was approached by officers with Phantom Cell Buster drawn, he and his fellow inmates yelled in protest, explaining that he had not been kicking his door. Pl.'s Dep 3; Taylor Aff.; Hess Aff. Still, the officers opened the food tray slot in order to deploy the pepper spray into the plaintiff's cell. Pl.'s Dep. 4. Only then did the plaintiff grab his bedding in an attempt to block the spray. *Id.* at 4–5. Based on the plaintiff's assertions, no force was needed because he had not kicked his door or been disruptive, and even the situation created by the officers' misunderstanding was deescalating.

The second factor—the proportionality of the force needed—follows directly from the amount of force needed. If there was no need for force, then any force used was excessive. Here, there is a dispute of fact as to whether any force was needed.

Therefore, there is also a dispute as to whether the defendants' use of the Phantom Cell Buster was excessive.

There is also a dispute of fact under the third factor—whether Hight reasonably perceived a threat under the circumstances. The defendant argues that she reasonably believed the plaintiff was kicking his door at the time. Def. Wendy Hight's Reply to Plaintiff's Response 4 ("Reply") [ECF No. 95]. However the record demonstrates that Hight gave the order to spray the plaintiff immediately upon entering the pod. *See* Pl.'s Aff. 3, 11; Hess Aff.; Peters Rep. She did not assess the situation or speak to the other officers when she arrived. According to the plaintiff, had she done so she would have discovered that he was not engaging in dangerous behavior. In fact, she would have seen that the situation was deescalating. Pl.'s Dep. 3 ("It—it kind of looked like they were going to stop"). Instead, she immediately instructed Officer Kidd to spray the plaintiff, and Officer Kidd obeyed.

The defendant also argues that a barricaded door is a threat to security. Reply 3. However, there is no evidence in the record that clearly demonstrates Hight was aware of the blockade before she gave the command to spray the plaintiff.[6] Even if she was aware, again, she failed to assess the situation upon arrival. Thus, there is a

---

[6] There is only evidence that she was "informed . . . that I/M Miller was banging on his door again" and that he was exhibiting "continuous disruptive behavior." *See* Hight Rep.; Peters Rep. Hight's own incident report tends to show that the kicking, and not the blockading, was the reason she gave the order she did. Hight Rep. (stating that she believed the officers to be in danger "due to the prior incident of the door showing unsecured).

11

dispute of fact as to whether her actions were in response to a reasonably perceived threat.

Finally, there is evidence that Defendant Hight did not make efforts to temper the severity of a forceful response. She did not make any orders to the plaintiff or attempt any other methods to stop the alleged disorderly behavior. Instead, she made her command immediately upon entering the pod. The officers then allegedly began to taunt and laugh at the plaintiff as he struggled to breathe, only further evidence of their malicious intent. *See* Hess Aff.

Of course, under the facts as provided by the defendants, the factors would be analyzed differently, though it is worth noting that there are even inconsistencies between the defendants' reports. Defendant Hight asserts that the plaintiff was in fact kicking his door, and refused to stop even after several verbal commands. Hight Rep. Defendant Hight claims she had previously spoken to the plaintiff, warning him that if he did not stop kicking, "there would be consequences to his actions." *Id.* Then, after nothing else worked and "believ[ing] the safety of the Officers and the Security of the Facility was in jeopardy," she ordered Officer Kidd to spray the plaintiff. *Id.* However, at this stage, I must interpret the evidence in the light most favorable to the plaintiff. These disputes must be resolved by a jury.

Based upon the *Whitley* factors and an examination of the facts taken in the light most favorable to the plaintiff, the court concludes that there are genuine

disputes of material fact concerning whether the defendant violated the plaintiff's Eight Amendment rights.

Turning to the objective inquiry, it is clear that the injury inflicted on the plaintiff was "sufficiently serious." "The objective component focuses not on the severity of any injuries inflicted, but rather on the 'nature of the force' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010)). Though the absence of serious injury is not irrelevant to the determination, it is the force used "that ultimately counts." *Wilkins*, 559 U.S. at 38; *see Parker v. Stevenson*, 625 F. App'x 196, 198 ("As the Supreme Court held in *Wilkins*, there is no significant injury threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim."). The plaintiff claims to have suffered itching, burning, and eye watering, and permanent scarring. Pl.'s Dep. 6. This is sufficient to establish that the nature of the force used against him was nontrivial. *See Tedder*, 527 F. App'x at 274; *Blount v. Farmer*, No. 7:14-cv-00418, 2015 WL 4404810, at *3 (W.D. Va. July 17, 2015).

As to the second question of the two-part qualified immunity inquiry, the Fourth Circuit has repeatedly held that prison officials violate the Eighth Amendment when they "use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain" *Iko*, 535 F.3d at 240 (4th Cir. 2008); *see Smith v. Hypes*, No. 2:14-cv-17001, 2017 WL 1016982, at *10

(S.D. W. Va. Feb 21, 2017), *report and recommendation* adopted, 2017 WL 988118 (S.D. W. Va. Mar. 14, 2017); *Williams*, 77 F.3d at 763. Therefore, the court finds that the plaintiff's right to be free from excessive or malicious use of pepper spray was well established at the time of this incident.

For the reasons stated, the court **FINDS** that there are genuine issues of material fact as to whether Hight is entitled to qualified immunity. Therefore, Hight is not entitled to qualified immunity at this time.

### ii. Underlying § 1983 Claim

The court concludes that issues of fact remain on the plaintiffs' § 1983 claim against Hight. Hight's summary judgment motion on this claim is, therefore, **DENIED**.

### b. State Claims

The plaintiff also asserts various state claims against Hight, arising from her directive to spray him, her failure to stop others from spraying him, and her alleged threatening behavior toward him.

### i. Qualified Immunity

Under the doctrine of qualified immunity for a state law claim, "the discretionary actions of government agencies, officials and employees performed in an official capacity are shielded from civil liability so long as the actions do not violate a clearly established law or constitutional duty." *West Virginia State Police v. Hughes*, 796 S.E.2d 193, 198 (W. Va. 2017).

As discussed above, questions of fact remain as to whether the defendant violated a clearly established constitutional right of which a reasonable person would have known and as to whether she acted with malice. Therefore, regardless of whether or not the actions taken were "discretionary," Defendant Hight is not entitled to qualified immunity for the plaintiff's state law claims at this time.

### ii. Underlying State Claims

The West Virginia Constitutional Claims were previously dismissed by the court. [ECF No. 20]. Therefore, the defendant's motion for summary judgment on this claim is **DENIED as moot**.

The court concludes that issues of fact remain on the plaintiff's assault, battery, and intentional infliction of emotional distress claims against Hight. Hight's summary judgment motion on these claims are, therefore, **DENIED.**

In his response to the defendant's motion for summary judgment, the plaintiff "voluntarily dismisses his negligence claim because full relief can be obtained from the other claims in this matter." Pl.'s Resp. in Opp'n Def. Hight's Mot. Summ. J. 2 n.2. This appears to be an attempt to dismiss the claim, but does not comport with the requirements of Rule 41(a). Even if the court construes it as a perversely stated request for voluntary dismissal pursuant to Rule 41(b), the court is unable to grant dismissal, which would be prejudicial to the defendants at this point in the litigation.

At this stage in the litigation, an announcement of an intention not to pursue a claim can only be construed as a concession that there is no factual basis for the

claim. The plaintiff provides no argument regarding any disputed facts nor asserts how the facts provided support the generic assertions of negligence set forth in the complaint. Therefore, the defendant's motion is **GRANTED** as to the negligence claim.

IV. Conclusion

For the reasons stated herein, the defendant's motion for summary judgment [ECF No. 83] is **GRANTED in part** and **DENIED in part**. The defendant's motion is **GRANTED** as to Count Five (Negligence), but **DENIED** as to Counts One (42 U.S.C. § 1983), Three (Assault & Battery), and Four (Intentional Infliction of Emotional Distress). The defendant's motion for summary judgment on Count Two (West Virginia Constitution) is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 31, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE