IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANDRE MILLER,

        Plaintiff,

v.                                                           CIVIL ACTION NO. 2:16-cv-05638

COMMISSIONER JIM RUBENSTEIN, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Austin Peters' Motion for Summary Judgment [ECF No. 79]. The plaintiff filed a response [ECF No. 90], and the defendant filed a reply [ECF No. 94]. The matter is ripe for adjudication. For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**.

I.     Background

The plaintiff, Andre Miller, is currently incarcerated in an administrative segregation unit at Mount Olive Correctional Complex ("MOCC"). Compl. ¶ 1 [ECF No. 2]. On January 21, 2015, correctional officers discovered that the plaintiff had alcohol in his cell. Mem. Law Supporting Def. Austin Peters' Mot. Summ. J. Ex. A, at 3 ("Pl.'s Dep.") [ECF No. 80-1]. When the plaintiff returned from recreation that day a corporal, Wendy Hight, approached the plaintiff and told him that his alcohol had been confiscated. *Id.* The plaintiff told her that he was "not worried about that" but

asked why the inmates' clean laundry was laying on the floor in the hallway. *Id.* at 4. Defendant Hight responded "F your laundry." *Id.* In response, the plaintiff kicked his door one time. *Id.* Defendant Hight then left the pod. *Id.* The parties, through unsworn incident reports, affidavits, and depositions, provide different accounts of what happened next.

The plaintiff claims that, approximately twenty to twenty-five minutes later while locked in his solitary confinement cell, he heard the sound of a cell door being kicked on the upper tier of his pod. Compl. ¶ 12; Pl.'s Dep. 4; Pl.'s Resp. Opp'n Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 1. ("Taylor Aff.") [ECF No. 88-1].[1] Shortly after the kicking began, Correctional Officers Brandon Mooney, Anthony Kidd, and Austin Peters approached the plaintiff's cell door with the Phantom Cell Buster.[2] Compl. ¶ 14; Pl.'s Dep. 3. Officer Kidd directed Officer Peters to "pop the bean hole."[3] Pl.'s Resp. Opp'n Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 3 ("Pl.'s Aff.") [ECF No. 88-3]. When the plaintiff heard this, he grabbed a pillow, and then his mattress, to try to block the opening. *Id.* The plaintiff asked them, "What did I do?" *Id.* The officers responded, "We're spraying you boy, we'll teach you bout [sic] kicking on our shift!"[4] *Id.* The plaintiff insisted that he had not kicked his door. Pl.'s

---

[1] The plaintiff incorporates by reference the exhibits attached to Defendants Rubenstein and Ballard's Motion for Summary Judgment. Pl.'s Resp. Opp. Def. Peters's Mot. Summ. J. 3 n.3 [ECF No. 90].

[2] The Phantom Cell Buster is a wand device used to deploy Oleoresin Capsicum ("OC") pepper spray, a chemical agent known to cause a burning sensation and watering of the nose, eyes, and mouth. It is utilized in MOCC in order to gain compliance of inmates. *See* Def. Wendy Hight's Mot. Summ. J. 3 [ECF No. 83-3].

[3] The "bean hole" refers to a slot in the door in which officers can give inmates food trays.

[4] The plaintiff says he does not know which officer made this statement. Pl.'s Dep. 29.

2

Dep. 3. Other inmates joined in, yelling that the plaintiff had not been the inmate kicking the door. *Id.*; Taylor Aff.; Pl.'s Resp. in Opp. Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 2 ("Hess Aff.") [ECF No. 88-2]. In fact, Steven Taylor, another inmate, was yelling that he had been the one kicking his door. Taylor Aff. The officers talked with the plaintiff for a few moments, during which the plaintiff insisted repeatedly that he had not been kicking the door. Pl.'s Aff. 3. According to the plaintiff, "it looked like they were going to stop." *Id.*

The unsworn incident reports of three of the officers involved contest the version of events provided by the plaintiff. According to Defendant Hight, the plaintiff began to kick his door as she originally exited the pod. Def. Wendy Hight's Mot. Summ. J. Ex. 4 ("Hight Rep.") [ECF No. 83-4]. As she entered the control tower, she saw the light corresponding to the plaintiff's cell flash on and off, indicating that he was still kicking his door.[5] *Id.* At this time, she and Officer Peters allegedly returned to the plaintiff's cell and gave him a verbal command to stop kicking his door "or there would be consequences to his actions." *Id.*; Def. Wendy Hight's Mot. Summ. J. Ex. 6 ("Peters Rep.") [ECF No. 83-6]. Approximately 40 minutes later, the officer in the control tower notified the officers that the plaintiff's cell door was showing as unsecured on the control panel. Hight Rep.; Peters Rep.; Def. Wendy Hight's Mot. Summ. J. Ex. 5 ("Kidd Rep.") [ECF No. 83-5]. Officers Kidd, Mooney, and Peters arrived at the plaintiff's cell to find that he had barricaded himself in with his mattress and multiple layers of clothing and that he was continuously kicking his

---

[5] When someone kicks their door, a panel alerts correctional officers that a door is being kicked and indicates which door. Def. Wendy Hight's Mot. Summ. J. Ex. 2 [ECF No. 83-2]; Pl.'s Compl. ¶ 13.

3

door. Peters Rep.; Kidd Rep. They instructed the plaintiff to cease his disruptive behavior. Peters Rep.; Kidd Rep. When he refused, they left to retrieve the Phantom OC Cell Buster and instructed another officer to notify Defendant Hight of the plaintiff's "continuous disruptive behavior." Peters Rep.; *see* Kidd Rep. According to Officer Kidd, they again "tr[ied] loud verbal commands to stop kicking his door at which time he did comply." Kidd Rep. There is no mention of the plaintiff's cooperation in the incident reports of the other officers.

It is undisputed that when Defendant Hight entered the pod, she instructed Correctional Officer Kidd to deploy a burst of pepper spray into the plaintiff's cell, though the method in which she did so is not clear. *Compare* Pl.'s Aff. 11 (stating that Hight "jumped in there and is like, spray his f***ing ass."); Hess Aff. ("Then about that time Cpl Hights [sic] came in saying f***ing spray him."), *with* Hight Rep. ("It was at this time (due to the prior incident of the door showing unsecured) I believed that the safety of the Officers and the Security of the Facility was in jeopardy and instructed COI Kidd to utilize the Phantom Oleoresin Capsicum Cell Buster in I/M Miller's cell to regain control of the situation."); Kidd Rep. ("At this time Corporal Wendy Hight did enter Pod 4 . . . and instructed me to deliver one three second burst of the Phantom Oleoresin Capsicum Cell Buster . . ."). Officer Kidd obeyed. Kidd Rep. According to the plaintiff, the officers stood by and laughed as he struggled to breathe. Taylor Aff; Resp. in Opp. Def. Rubenstein & Def. Ballard's Mot. Summ. J Ex. 3 ("Miller Aff.") [ECF No. 88-3]. Hight asked "how [does] the colored boy like that?" Miller Aff. The plaintiff was strip-searched and placed into mechanical restraints.

4

Hight Rep. He was then taken to the Multi-Purpose Room to be assessed by the medical staff. *Id* However, he refused medical treatment and decontamination. Hight Rep.; Pl.'s Dep. 5–6. Days later, the plaintiff filed a "sick call" complaining of watering eyes, burning on his face, itching on his body, and several facial scars. Pl.'s Dep. 6.

On June 23, 2016, the plaintiff filed a five-count Complaint alleging: (1) United States Constitutional violations, (2) West Virginia Constitutional violations, (3) Assault and Battery, (4) Intentional Infliction of Emotional Distress, and (5) Negligence. Compl. [ECF No. 1]. On October 12, 2016, the court entered an order dismissing the plaintiff's West Virginia Constitutional claim (Count 2), pursuant to the plaintiff's request. Order [ECF No. 20]. Thus only Counts One, Three, Four, and Five remain.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational

5

trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III. Discussion

Defendant Peters moves for summary judgment as to all claims made against him in the Complaint: (1) § 1983, (2) West Virginia Constitutional Claims, (3) Assault & Battery, (4) Intentional Infliction of Emotional Distress, and (5) Negligence. Additionally, the defendant moves for summary judgment regarding the plaintiff's

request for punitive damages. He also asserts qualified immunity for the § 1983 and negligence counts.

### a. 42 U.S.C. § 1983

42 U.S.C. § 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his constitutional or federal rights. In Count One, the plaintiff alleges that Defendant Peters violated his Eighth Amendment right against cruel and unusual punishment by failing to intervene to prevent the excessive use of force used against him by other defendants. Compl. ¶ 67. Defendant Peters argues that he is entitled to qualified immunity. Mem. Law Supp. Def Austin Peters' Mot. Summ. J. 16 ("Defs.' Mem.") [ECF No. 80].

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Fourth Circuit has held that:

> When a government official properly asserts qualified immunity, the threshold question that a court must answer

is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."

*Henry v. Purnell*, 501 F.3d 374, 377 (citations omitted). Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established. *Id.* at 378. If the answer to either question is no, then the defendant is entitled to qualified immunity.

"Under the first prong, a court must determine whether the facts as alleged, taken in the light most favorable to plaintiff, demonstrate the violation of a constitutional right." *Cline v. Auville*, No. 1:09-0301, 2010 WL 1380140, at *3 (S.D. W. Va. Mar. 30, 2010). The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" *Stevenson v. City of Seat Pleasant, Maryland*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cty., Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer

is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204.

At this stage, the court must take the evidence in the light most favorable to the plaintiff. The underlying issue of whether the force used violated the plaintiff's constitutional right to be free from excessive force remains in dispute. *See* Mem. Op. & Order 7–14 [ECF No. 118]. Additionally, the evidence presented by the plaintiff, and by the officers, shows that Defendant Peters was present before and during the period that the plaintiff was pepper sprayed. In fact, the plaintiff alleges that by the time Hight entered the pod, the situation between the plaintiff and the other officers, including Peters, was deescalating. Pl.'s Dep. 3. Still, Peters did not attempt to explain the situation to Hight when she entered the pod. He did not attempt to dissuade Hight from ordering Officer Kidd to spray the plaintiff or to dissuade Kidd from executing Hight's order. Def.'s Mem. Ex. A, at 3 [ECF 80-1]; Compl. 5–7. Therefore, the facts that the plaintiff has alleged make out a violation of a constitutional right by Defendant Peters.[6]

The next question is whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. "When determining whether a right was 'clearly established,' '[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Mack v. Turner*, No. 5:15-03589, 2016 WL 7840216, at \*6 (S.D. W. Va. Dec. 13, 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305,

---

[6] It is unclear from the record exactly how much time elapsed between Hight entering the pod, Hight commanding Kidd to spray the plaintiff, and Kidd executing the order. Thus, the court is unable to make a determination regarding whether or not the defendant had a reasonable opportunity to prevent the harm.

9

308 (2015) (per curiam)). "To be 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. "In the prison context, it 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). The Fourth Circuit has repeatedly held that prison officials violate the Eighth Amendment when they "use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Id.* at 240. After the Fourth Circuit's decisions in *Randall* and *Stevenson*, it was sufficiently clear to a reasonable officer "that standing idly by while another officer uses excessive force upon an inmate is a violation of that inmate's Eighth Amendment rights." *Mack*, 2016 WL 7840216, at *7. Therefore, the right at issue was "clearly established" at the time of Defendant Peters' alleged misconduct on January 21, 2015.

Since the facts that the plaintiff has alleged make out a violation of a constitutional right, and the right at issue was clearly established at the time of the defendant's alleged misconduct, Peters is not entitled to qualified immunity for the plaintiff's § 1983 claim. And, as explained above, the court concludes that issues of fact remain on the plaintiffs' § 1983 claim against defendant Peters. Therefore, the defendant's motion for summary judgment as to this count is **DENIED**.

### b. West Virginia Constitutional Claims

The West Virginia Constitutional Claims were previously dismissed by the court. Order [ECF No. 20]. Therefore, the defendant's motion for summary judgment on these claims is **DENIED as moot**.

### c. Battery and Intentional Infliction of Emotional Distress

In his response, the plaintiff states that he "does not pursue his claim for intentional infliction of emotional distress ("IIED") or battery against Defendant Peters." Pl.'s Resp. 2 n.2. At this stage in the proceedings, such a statement can only be a concession that there is no factual basis for these claims against Defendant Peters. For this reason, the defendant's motion for summary judgment as to the plaintiff's IIED and battery claims against Defendant Peters is **GRANTED**.

### d. Negligence

In his response to the defendant's motion for summary judgment, the plaintiff "voluntarily dismisses his negligence claim because full relief can be obtained from the other claims in this matter." This seems to be an attempt to dismiss the claim, but does not comport with the requirements of Rule 41(a). Even if the court construes it as a perversely stated request for voluntary dismissal pursuant to Rule 41(b), the court is unable to grant dismissal, which would be prejudicial to the defendants at this point in the litigation.

At this stage in the litigation, an announcement of an intention not to pursue a claim can only be construed as a concession that there is no factual basis for the

claim. The plaintiff provides no argument regarding any disputed facts nor asserts how the facts provided support the generic assertions of negligence set forth in the complaint. Therefore, the defendant's motion is **GRANTED** as to the negligence claim.

### e. Assault

"In West Virginia, assault and battery are separate torts." *Weigle*, 139 F. Supp. 3d at 776; *see West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 494 (W. Va. 2004) (setting forth the elements of assault and battery and distinguishing the two from each other). Therefore, although the plaintiff has conceded his battery claim against defendant Peters, he may continue to prosecute the assault claim. The court concludes that issues of fact remain on the plaintiff's assault claim against defendant Peters. Defendant Peters' summary judgment motion on this count is, therefore, **DENIED**.

### f. Punitive Damages

The defendant argues that the plaintiff cannot recover punitive damages against him pursuant to West Virginia Code § 55-17-4(3). Def.'s Mem. 13. This statute only applies when government officials are sued in their official capacity. West Virginia Code § 55-17-4(3). Since the plaintiff is suing Peters in his individual capacity, Compl. ¶ 6, this statute is not applicable to him.

Defendant Peters also argues that there is no conduct attributed to him that could lead to an award of punitive damages. The court concludes that issues of fact

remain regarding the defendant's conduct at this time, and therefore summary judgment is not proper regarding punitive damages.

IV. Conclusion

The defendant's motion for summary judgment [ECF No. 79] is **GRANTED in part** and **DENIED in part**. The defendant's motion is **GRANTED** as to Counts Four (IIED) and Five (Negligence). The defendant's motion is **DENIED** as to Count One (42 U.S.C. § 1983). As to Count Three (Assault and Battery), the defendant's motion is **GRANTED** as to the plaintiff's battery claim, but **DENIED** as to the plaintiff's assault claim. The defendant's motion for summary judgment on Count Two (West Virginia Constitution) is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 31, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE